UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT OWENSBORO
CIVIL ACTION NO. 4:10CV-P109-M

REVEL ZAIN                                                                    PLAINTIFF

v.

DAVID OSBORNE *et al.*                                                        DEFENDANTS

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff Revel Zain filed this *pro se* civil rights action under 42 U.S.C. § 1983.  He is

proceeding *in forma pauperis*.  This matter is before the Court on the initial review of the

complaint pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir.

1997).[1]  For the reasons set forth below, the Court will dismiss some of Plaintiff's claims and

allow others to proceed past initial review.

**I.**

Plaintiff is currently incarcerated at the Hopkins County Detention Center.  His

complaint arises from his previous incarceration as a convicted inmate at the Daviess County

Detention Center (DCDC).  Plaintiff sues David Osborne, Administrator at DCDC; Bill Billings,

Operation Commander at DCDC; Kaneth Elschide, Sergeant at DCDC; Ladonna Thompson,

Commissioner at the Department of Corrections (DOC); and Rodney Ballard, Deputy

Commissioner at the Division of Local Facilities.  He sues each Defendant in his or her

individual and official capacities.

---

[1]This Court dismissed the case as abandoned on November 22, 2010 (DN 14).  Plaintiff
appealed the dismissal.  The Sixth Circuit vacated the judgment and remanded the case to this
Court on November 9, 2011 (DN 23), and the Sixth Circuit issued its mandate on December 9,
2011 (DN 24).

Plaintiff states that he is a convicted state prisoner but is being housed at DCDC, a county facility. He states that he is being denied the human and civil rights of a state inmate. He states that when he arrived at DCDC he was told that he could not have his legal or religious materials. He continued to request Islamic religious materials, services, and an Islamic prayer rug while incarcerated at DCDC and was denied the items. He states that he was advised by the DCDC chaplain that Defendants Osborne and Billings said they had no service for Muslims in the facility, denied his request for a religious prayer rug, and did not allow Islamic reading material in the facility. In addition, Billings told Plaintiff directly that DCDC did not have Islamic service for Muslims. He stated that DCDC provided three weekly church services for Christian inmates. Plaintiff states that there was a meeting scheduled about starting a Muslim service but that Defendant Billings and Osborne denied his request to attend it. Plaintiff states that he experienced religious persecution and hardship.

Plaintiff requested to be transferred to another facility that would accommodate his religious faith. Plaintiff states that Defendant Billings told him that he should find a facility that he wished to go to and pay Billings the money to transfer him. Plaintiff states that he believed that it was illegal for Billings to ask him to pay money for a transfer due to religious reasons.

Plaintiff states that DCDC had defective plumbing, that the toilets contained raw feces, and that he experienced the defective plumbing in various units at DCDC. When he used the toilet, feces would "back up" on him when the toilet next to his cell was flushed. He said that he addressed the plumbing conditions with Defendants Osborne and Billings but was ignored. He states that the feces produced disease bacteria which created a health and disease risk. He

2

further states that raw feces was present in the toilets while he took a shower and he would "get sick" every time he took a shower due to the smell.

Plaintiff states that on January 25, 2010, he was illegally and unlawfully put in administrative segregation by Defendants Billings and Elschide and that he received no disciplinary action or charges. He states that he was in administrative/isolated segregation for six days in a five by ten cell with two other inmates in violation of due process, and his First, Sixth, Eighth, Ninth, and Fourteenth Amendment rights.

Plaintiff states that when he complained to Defendant Elschide about being denied his religious practice Elschide told him that he had a place where Plaintiff could practice his religion and be by himself. Plaintiff states that Osborne, Elschide, and Billings placed him in administrative segregation in retaliation for his complaints about not having Islamic service for Muslims, no access to a law library, and the problems with the toilet system, violating his First, Sixth, Eighth, and Fourteenth Amendment rights. He further states that he was on lockdown "24 hours a day with no outside recreation for exercise."

Plaintiff also states that on May 25, 2010, Defendant Billings ordered Defendant Elschide to put him in high risk confinement because he called Defendants "jail house gangsters" and said they were trying to kill him. Defendant Elschide threw him to the floor, pushed him against the wall, and told the guards to put him face down on the floor while he was handcuffed. He said that in high risk confinement there was a big hole in the floor to the sewer system and that bugs were all over the cell, getting in his hair and bed at night. He was housed in high risk confinement 24 hours a day with no outside recreation for exercise. He states that he received no disciplinary charges while he was housed at DCDC.

3

Plaintiff further states that when inspectors came to DCDC Osborne and Billings retaliated against him by having Plaintiff and other inmates in segregation held at gunpoint and threatened to do them harm because they did not want the inmates to warn the people on the tour about "the violation and the unlawful imprisonment of confinement."  He stated that on another occasion non-Defendant Tracy Moutadier came to inspect DCDC and Billings ordered the guards to move the inmates around the jail and Billings flushed the toilet so she did not see the raw feces.  Moutadier told Plaintiff she was not going to respond to any more of Plaintiff's letters.  Plaintiff claims the incident was a "cover up job" to quiet the complaints about the jail.

Plaintiff states that Defendants Osborne, Billings, Elschide, Thompson, Ballard, and non-Defendant Moutadier knew about the toilet problem for years but refused to pay to fix it and forced the inmates to live in the conditions with "cruel and deprave indifferent."  Plaintiff states that non-Defendants Governor Steve Beshear, the DOC, Daviess County, and others are in a conspiracy to cover up the toilet problems to protect federal tax dollars they receive from housing state prisoners.

Plaintiff states that Defendant Billings intercepted all grievances and complaints and inmates who complained about the conditions gave up because they did not believe anything could be done.  Plaintiff also states that he was denied access to a law library to research his pending case in Jefferson County.

Plaintiff further states that he was forced to sleep on a mat on the concrete floor while housed in various units at DCDC.  He was told by Billings that the jail was full and he would have to sleep on the floor for the time being.  He was required to sleep on the concrete floor causing him severe back and joint pain and numbness of arms and legs.  He saw the nurse about

4

his medical complaints.  He requested to see the joint and back specialist doctor, but the nurse told him no and gave him pain and inflammation medication for 10 days and directed the guard to give him an extra mat for sleeping.

Plaintiff says he was harassed and threatened by non-defendant Roberts.  He stated that he feared for his safety.  He stated that he wrote a grievance about the incident with non-Defendant Roberts and that Defendant Billings never responded.

Plaintiff further states that on March 11, 2010, twenty guards came into his cell "with assault gears ski masks guns with Lazer pointing at cell doors."  The guards threw him face down to the concrete floor, dragged him out of his cell, and pointed a gun to his head.  They stripped his cell of everything in it and then threw him back in the cell face down on the concrete floor and asked if he "had fun with there guest."  He said that he was told by a guard that Defendant Billings ordered the guards to do this.  He stated that his religious materials, toothpaste, soap, and towel were taken and were not returned until the following day.

Plaintiff states that he wrote letters to various people regarding his complaints about DCDC, including Defendants Thompson and Ballard, but "they did nothing other than conspire together to cover up the conspiracy."

Plaintiff also states that the entry door to the segregation unit slammed so loudly that it caused a medical problem with his hearing.  He states that Defendant Billings denied his grievance regarding the entry door stating that a door slamming loudly did not create a medical problem.

Plaintiff also states that in the security cell he was forced to watch television through a window, that the tv was 50 feet away, and that he had to stand for hours straining his eyes to

look at the television.  His requests to watch television outside of his cell were denied.

As relief, Plaintiff seeks $20 million in compensatory damages, $80 million in punitive damages, and injunctive relief in the form of closing down the units and removing Defendants Osborne, Billings, and Elschide from their positions.

## II.

When a prisoner initiates a civil action against a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the complaint, or any portion of it, if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *See* 28 U.S.C. §§ 1915A(b)(1), (2); *McGore*, 114 F.3d at 604.

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless.  *Id.* at 327.

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, — , 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true."  *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir.

6

2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).  "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555, 557).

Although this Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519 (1972), the duty does not require the Court "to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff.  *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975).  To command otherwise would require the Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## III.

### A.    Injunctive relief

Plaintiff's demand for injunctive relief must be dismissed.  An inmate's claim for injunctive relief regarding the conditions of his confinement becomes moot due to the inmate's release from confinement or transfer to another facility.  *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (finding inmate's request for injunctive relief moot as he was no longer confined

to the institution where the alleged wrongdoing occurred).  Since filing the complaint, Plaintiff

has been transferred from DCDC, and his claims for injunctive relief are therefore moot.

Accordingly, the Court will dismiss Plaintiff's claims for injunctive relief for failure to

state a claim upon which relief may be granted.

**B.      Official-capacity claims against Defendants Thompson and Ballard**

"Official-capacity suits . . . 'generally represent [] another way of pleading an action

against an entity of which an officer is an agent.'"  *Kentucky v. Graham*, 473 U.S. 159, 166

(1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)).

Because Defendants Thompson and Ballard are employees or officers of the Commonwealth of

Kentucky, the claims brought against them in their official capacities are deemed claims against

the Commonwealth of Kentucky.  *See id*.  State officials sued in their official capacities for

money damages are not "persons" subject to suit under § 1983.  *Will v. Mich. Dep't of State*

*Police*, 491 U.S. 58, 71 (1989).  Thus, because Plaintiff seeks money damages from state officers

or employees in their official capacities, he fails to allege cognizable claims under § 1983.

Additionally, the Eleventh Amendment acts as a bar to claims for monetary damages against

these Defendants in their official capacities.  *Kentucky v. Graham*, 473 U.S. at 169.

Therefore, Plaintiff's official-capacity claims against Defendants Thompson and Ballard

will be dismissed for failure to state a claim upon which relief can be granted and for seeking

monetary relief from Defendants who are immune from such relief.

**C.      Individual-capacity claims against Defendants Thompson and Ballard**

Plaintiff avers that he wrote letters to Defendants Thompson and Ballard about the

conditions at DCDC and that they did not respond to his complaints but participated in a

conspiracy to cover up the problems there.

First, to the extent Plaintiff wishes to hold either of these Defendants responsible for their failure to act on his complaints in their roles as supervisors of other Defendants, the doctrine of *respondeat superior*, or the right to control employees, does not apply in § 1983 actions to impute liability onto supervisors. *Monell*, 436 U.S. at 691; *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). "[L]iability of supervisory personnel must be based on more than merely the right to control employees." *Hays v. Jefferson Cnty.*, 668 F.2d 869, 872 (6th Cir. 1982). "Likewise, simple awareness of employees' misconduct does not lead to supervisor liability." *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003) (citing *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 728 (6th Cir. 1996)). Supervisory liability "must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)).

Secondly, Plaintiff's conspiracy claims against these Defendants also fail. "It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987). A conspiracy will exist under § 1983 when there is "an agreement between two or more persons to injure another by unlawful action." *Am. Postal Workers Union v. City of Memphis*, 361 F.3d 898, 905 (6th Cir. 2004). It must be shown that "there was single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance

9

of the conspiracy that caused injury to the complainant." *Id.* (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)).

Upon review of Plaintiff's claims, it is evident that he has failed to plead these claims with the requisite specificity.  Plaintiff's allegations are simply conclusory allegations of a conspiracy that do not survive initial review.  Plaintiff has not pleaded the "specifics" of any alleged conspiracy such as "when, where, or how the defendants conspired." *Perry v. Southeastern Boll Weevil Eradication Found., Inc.*, 154 F. App'x 467, 477 (6th Cir. 2005). The conspiracy claims against Defendants Thompson and Ballard are therefore subject to dismissal.

Accordingly, Plaintiff's individual-capacity claims against Defendants Thompson and Ballard will be dismissed for failure to state a claim upon which relief may be granted.

**D.      Incarceration in county facility and denial of transfer**

Plaintiff claims that he was denied the human and civil rights of a state inmate while he was housed in a county facility.  While state law may dictate the duration and circumstances under which a convicted inmate can be held in a county facility, an inmate does not enjoy a constitutional right to be housed in any particular facility. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 576 (6th Cir. 2005); *Biliski v. Harborth*, 55 F.3d 160, 162 (5th Cir. 1995) (per curiam) (rejecting claim that being held in county facility was more disagreeable than if plaintiff had immediately been transferred to a state facility).  Therefore, Plaintiff's claim concerning his incarceration at a county facility will be dismissed for failure to state a claim.

Plaintiff also states that Defendant Billings denied his request for a transfer to another facility to accommodate his religious faith.  Once again, a prisoner does not have a constitutional

right to be housed at a particular prison. *See Harbin-Bey*, 420 F.3d at 576. Therefore, Plaintiff's claim that he was denied a transfer to accommodate his religious faith will be dismissed for failure to state a claim upon which relief may be granted.[2]

Further, to the extent Plaintiff alleges that it was "illegal" for Defendant Billings to ask Plaintiff for money for a transfer for religious reasons, "[i]t is well settled that the question of whether and when prosecution is to be instituted is within the discretion of the Attorney General." *Powell v. Katzenbach*, 359 F.2d 234, 235 (D.C. Cir. 1965). The Court does not have the power to direct that criminal charges be filed against anyone. *Peek v. Mitchell*, 419 F.2d 575, 577-78 (6th Cir. 1970); *Fleetwood v. Thompson*, 358 F. Supp. 310, 311 (N.D. Ill. 1972).

**E.      Access to law library and legal material**s

Plaintiff claims that he was denied legal materials and denied access to a law library to research his pending case. In order to state a claim for interference with access to the courts, however, a plaintiff must show actual injury. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). "An inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense. That would be the precise analog of the healthy inmate claiming constitutional violation because of the inadequacy of the prison infirmary." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). "'Meaningful access to the courts is the touchstone,' and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Id.* (internal citations omitted). "Examples of

---

[2]As addressed below, the Court will allow Plaintiff's claims regarding denial of religious services and materials to proceed past initial review.

actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Harbin-Bey*, 420 F.3d at 578. Here, Plaintiff has not alleged that he was actually prevented from meaningfully accessing the courts. As such, he has not set forth a constitutional claim for interference with the courts.

Therefore, Plaintiff's claim of denial of access to a law library and legal materials will be dismissed for failure to state a claim upon which relief may be granted.

**F.      Defective plumbing**

Plaintiff complains that the DCDC plumbing was defective causing feces to remain in the toilets and that there was a conspiracy to cover up the problems with the toilets. He also states that in high risk confinement there was a big hole in the floor to the sewer system.

The Eighth Amendment protects inmates from cruel and unusual living conditions. The law has long been that "a violation of a federally secured right is remediable in damages only upon proof that the violation proximately caused injury." *Horn by Parks v. Madison Cnty. Fiscal Court*, 22 F.3d 653, 659 (6th Cir. 1994); *see also Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 305-08 (1986). In addition to the legal requirement of an "injury" in case law historically, Congress acted to further limit prisoner suits to only a specific kind of injury. Under the Prison Litigation Reform Act (PLRA), lawsuits brought by institutionalized persons requires a "physical" injury in order to permit recovery: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The physical injury need not be significant, but it must be more than *de minimis* for an Eighth

Amendment claim to proceed. *See Adams v. Rockafellow*, 66 F. App'x 584, 586 (6th Cir. 2003) (citing *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997)).

Plaintiff alleges that the defective toilets caused him to "get sick." However, he does not allege that he sought or received medical treatment as a result of the defective toilets. Therefore, Plaintiff has not alleged that he suffered an injury that meets the PLRA's threshold. *See Starnes v. Green Cnty. Sheriff's Dep't,* No. 2:08-cv-244, 2010 U.S. Dist. LEXIS 52139, at *7 (E.D. Tenn. May 26, 2010) (plaintiff's complaint that he "felt sick" for two days was, at most, a *de minimis* injury) (citing *Flanory v. Bonn*, 604 F.3d 249, 254 (6th Cir. 2010)); *Moore v. Simmons*, No. 5:06-CT3143 H, 2007 U.S. Dist. LEXIS 68394, at *3 (E.D.N.C. May 18, 2007) (no constitutional violation where plaintiff did not state that the complained-of conditions, including stagnant toilets and inmates throwing feces daily, "caused him serious or significant physical injury" despite plaintiff's claim that the conditions caused "sore throat-high grade fever"). Further, Plaintiff has failed to allege that the defective toilets' alleged disease risk resulted in physical harm. *Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir. 1996) (no Eighth Amendment violation based on allegations that prisoner was exposed for four days to raw sewage from an overflowed toilet in his cell); *Catanzaro v. Mich. Dep't of Corrs.*, No. 08-11173, 2009 U.S. Dist. LEXIS 60453, at *4 (E.D. Mich. July 14, 2009) ("[W]hile the plaintiffs make generalized claims about unsanitary prison kitchen conditions, and assert that these conditions are likely to cause the spread of communicable diseases, they do not themselves establish that, as a result of allegedly unconstitutional prison conditions, they have been injured.").

13

Therefore, Plaintiff's claims for monetary damages concerning the defective toilets will be dismissed for failure to state a claim upon which relief may be granted.

## G.      Grievance handling

Plaintiff states that Defendant Billings denied, ignored, and intercepted his grievances. However, there is "no constitutionally protected due process interest in unfettered access to a prison grievance procedure." *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005).  By the same token, a plaintiff cannot maintain a claim against a prison official based solely on his or her denial of the plaintiff's grievance.  "The 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983." *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (quoting *Shehee v. Luttrell*, 199 F.3d at 300).  "The mere denial of a prisoner's grievance states no claim of constitutional dimension." *Alder v. Corr. Med. Servs.*, 73 F. App'x 839, 841 (6th Cir. 2003).  A plaintiff's claim is against the subjects of his grievances, not those who merely decided whether to grant or deny the grievances.  *See Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006) ("Skinner's complaint regarding Wolfenbarger's denial of Skinner's grievance appeal, it is clear, fails to state a claim."); *Lee v. Mich. Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004) ("Section 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance."); *Nwaebo v. Hawk-Sawyer*, 83 F. App'x 85, 86 (6th Cir. 2003) (same); *Simpson v. Overton*, 79 F. App'x 117, 120 (6th Cir. 2003) ("[T]he denial of an appeal cannot in itself constitute sufficient personal involvement to state a claim for a constitutional violation."); *Martin v. Harvey*, 14 F. App'x 307, 309 (6th Cir. 2001) ("The denial of the grievance is not the same as the denial of a request to receive medical care.").

14

Thus, where the allegation against a defendant relates only to the denial or handling of a grievance, a plaintiff fails to allege any personal involvement by the defendant in the alleged constitutional violation.  *Id.*

Plaintiff's claims against Defendant Billings regarding the denial or handling of grievances, therefore, will be dismissed for failure to state a claim upon which relief may be granted.

**H.      Segregation/high risk confinement**

Plaintiff states that on three occasions Defendants Osborne, Elschide, and Billings placed him in administrative segregation and/or in high risk confinement in violation of due process and the First, Sixth, Eighth, Ninth, and Fourteenth Amendments.  The First Amendment, which protects freedom of speech, assembly, and religion, has no application to Plaintiff's claims concerning placement in segregation and high risk confinement.  Likewise, the Ninth Amendment, which provides, "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people," and "does not confer substantive rights in addition to those conferred by other portions of governing law," *Gibson v. Matthews*, 926 F.2d 532, 537 (6th Cir. 1991), does not apply to Plaintiff's claims.  Further, because Plaintiff asserts that he was a convicted state inmate at the time of the facts alleged in the complaint, neither the Fourth nor the Fourteenth Amendment applies.  Rather, the Eighth Amendment is the source of protection for convicted prisoners complaining of prison conditions. *See Estelle v. Gamble*, 429 U.S. 97 (1976).

"A viable Eighth Amendment claim must satisfy both an objective component and a subjective component."  *Farmer v. Brennan,* 511 U.S. 825, 834 (1994); *Street v. Corr. Corp. of*

*Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  The objective component requires that the deprivation be "sufficiently serious."  *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  An inmate must show that he was deprived of "the minimal civilized measure of life's necessities."  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"  *Farmer*, 511 U.S. at 832 (citations omitted).  The subjective component requires the defendant to act with "deliberate indifference" to a prisoner's health or safety. *Wilson*, 501 U.S. at 302-03.

"Not  every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment."  *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987).  "[H]arsh 'conditions of confinement' may constitute cruel and unusual punishment unless such conditions 'are part of the penalty that criminal offenders pay for their offenses against society.'"  *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (quoting *Rhodes*, 452 U.S. at 347).  The alleged conduct must reflect an "unnecessary and wanton infliction of pain" to fall within the ambit of conduct proscribed by the Eighth Amendment. *Ingraham v. Wright*, 430 U.S. 651, 670 (1977) (quoting *Estelle*, 429 U.S. at 103).

As to Plaintiff's complaints about placement in segregation and high risk confinement, "'[b]ecause placement in segregation is a routine discomfort that is a part of the penalty that criminal offenders pay for their offenses against society, it is insufficient to support an Eighth Amendment Claim.'"  *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008) (quoting *Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003)); *Merchant v. Hawk-Sawyer*, 37 F. App'x 143, 145 (6th Cir. 2002) ("Merchant presented no evidence that he was denied basic

16

human needs or was otherwise subjected to cruel and unusual punishment by virtue of the conditions in administrative detention or disciplinary segregation.").  Plaintiff does not allege that he was denied basic human needs while in the isolation cell.  Likewise, Plaintiff's complaint about lack of recreation during his assignment to segregation and high risk confinement do not rise to the level of an Eighth Amendment violation.  *See*, *e.g.*, *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003) ("This court has never set a minimum amount of time a prisoner must have access to outdoor recreation."); *Townsend v. Padula*, No. C/A0:0421879-RBH, 2005 U.S. Dist. LEXIS 39404, at *3 (D.S.C. Dec. 30, 2005) (finding a temporary denial of outdoor exercise with no medical effects is not a substantial deprivation).

Therefore, Plaintiff's claims concerning his placement in segregation and high risk confinement will be dismissed for failure to state a claim upon which relief may be granted.

## I.      Excessive force

Plaintiff claims that Defendant Elschide threw him to the floor, pushed him against a wall, and told the guards to put him face down on the floor while he was handcuffed.  He states that on another occasion twenty guards came into his cell "with assault gears ski masks guns with Lazer pointing at cell doors."  Plaintiff avers that the guards threw him face down to the concrete floor, dragged him out of his cell, and pointed a gun to his head.  They stripped his cell of everything in it and then threw him back in the cell face down on the concrete floor and asked if he "had fun with there guest."

Upon review, the Court will allow Plaintiff's excessive-force claims to go forward against Defendants Elschide and Billings in their individual capacities for monetary damages.  In so doing, the Court does not pass judgment on the ultimate merit of this claim.

17

However, Plaintiff's official-capacity claims against Defendants Elschide and Billings are actually against their employer, Daviess County. *Kentucky v. Graham*, 473 U.S. at 166. A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691; *Deaton v. Montgomery County, Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). The plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 363-64 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds by Frantz v. Village of Bradford*, 245 F.3d 869 (6th Cir. 2001)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994) (quoting *Polk County v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)).

Plaintiff has not alleged that Defendant Elschide or Billings acted pursuant to a municipal policy or custom with respect to these alleged physical incidents. Plaintiff's complaint appears to allege isolated occurrences affecting only him. *See Fox v. Van Oosterum*, 176 F.3d 342, 348 (6th Cir. 1999) ("No evidence indicates that this was anything more than a one-time, isolated event for which the county is not responsible."). Accordingly, Plaintiff's official-capacity claims of excessive force against Defendants Elschide and Billings will be dismissed for failure to state a claim upon which relief may be granted.

**J.      Religious materials and services**

Plaintiff claims that Defendants Osborne and Billings denied his requests for Islamic

18

services, materials, and an Islamic prayer rug.  Upon review, the Court will allow Plaintiff's

claims of denial of religious services, materials, and an Islamic prayer rug to proceed against

Defendants Osborne and Billings in their individual and official capacities for monetary

damages.  In so doing, the Court does not pass judgment on the ultimate merit of this claim.

**K.      Removal of property for one day**

Plaintiff claims that guards stripped his cell and removed religious materials and hygiene

items that were not returned until the following day.  Short deprivations of hygiene items are

insufficient to establish an injury under the Eighth Amendment.  *Flanory v. Bonn,* 604 F.3d 249,

254 (6th Cir. 2010) (citing  *Harris v. Fleming*, 839 F.2d 1232, 1235-36 (7th Cir. 1988) (no

constitutional violation where prison officials failed to provide prisoner with toilet paper for five

days, and with soap, toothbrush, and toothpaste for ten days)); *Antonelli v. Walters*, No.

07-219-GFVT, 2009 U.S. Dist. LEXIS 29396 (E.D. Ky. Mar. 31, 2009).  Therefore, Plaintiff's

claim concerning the removal of his hygiene items for one day will be dismissed for failure to

state a claim.

As addressed above, the Court will allow Plaintiff's claims concerning denial of religious

materials to proceed past initial review.

**L.      Harassment and threats**

Plaintiff states that he was harassed and threatened by non-Defendant Roberts.  Since

Plaintiff does not name Roberts as a Defendant, the claim will be dismissed.  However, even if

Defendant had sued Roberts, although reprehensible and not condoned, verbal abuse,

harassment, and threats are insufficient to state a constitutional violation under § 1983.  *See Ivey*,

832 F.2d at 955; *Miller v. Wertanen*, 109 F. App'x 64, 65 (6th Cir. 2004) (finding guard's threat

of sexual assault did not violate plaintiff's constitutional rights); *Clark v. Turner*, No. 96-3265,

1996 U.S. App. LEXIS 33113, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment or idle threats

are generally not sufficient to constitute an invasion of an inmate's constitutional rights.").

     Moreover, to the extent that Plaintiff seeks to hold any other Defendant liable based on

their roles as supervisors of non-Defendant Roberts, as previously stated, *respondeat superior*

does not apply in § 1983 actions to impute liability onto supervisors.  *Monell*, 436 U.S. at 691;

*Taylor*, 69 F.3d at 80-81; *Bellamy,* 729 F.2d at 421.

     Therefore, Plaintiff's claims that he was harassed and threatened will be dismissed for

failure to state a claim upon which relief may be granted.

## M.    Sleep on mat

     Plaintiff claims that Defendant Billings required him to sleep on a mat on the concrete

floor, which caused him severe back and joint pain and numbness of arms and legs.  He states

that he saw the nurse about his complaints, and the nurse gave him pain and inflammation

medicine for 10 days and directed the guard to give him an extra mat.

     Plaintiff's complaint that he was required to sleep on a mat does not rise to the level of an

Eighth Amendment violation.  *See*, *e.g.*, *Grissom v. Davis*, 55 F. App'x 756, 757-58 (6th Cir.

2003) ("Grissom neither alleged nor presented any evidence that the seven-day mattress

restriction deprived her of basic human needs or caused her to suffer serious harm."); *Jones v.

Toombs*, No. 95-1395, 1996 U.S. App. LEXIS 6545, at *1 (6th Cir. Feb. 15, 1996) ("The

defendants did not violate Jones's Eighth Amendment rights by depriving him of a mattress for a

two week period.") (citing *Schroeder v. Kaplan*, No. 93-17123, 1995 U.S. App. LEXIS 18915, at

*2 (9th Cir. July 7, 1995) (requiring prisoner to sleep on floor for a four-week period without use

of mattress does not violate the Eighth Amendment)).  Moreover, to the extent that Plaintiff experienced pain and discomfort as a result of sleeping on the mat, based on his allegations, he was seen by the medical staff and his complaints were addressed.

Therefore, Plaintiff's claim against Defendant Billings regarding sleeping on a mat will be dismissed for failure to state a claim.

**N.      Medical treatment**

Plaintiff states that he saw the nurse about his complaints of severe back and joint pain and numbness of arms and legs.  He requested to see a specialist, but the nurse told him no and gave him pain and inflammation medicine for 10 days and directed the guard to give him an extra mat.  Plaintiff names no nurse or other medical personnel against whom he asserts this claim, and the claim will therefore be dismissed for failure to state a claim upon which relief may be granted.

However, even if he had asserted this claim against a named Defendant, the claim would fail.  "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."  *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).  Here, because Plaintiff received medical treatment and only disputes the adequacy of the treatment, his claim is subject to dismissal.

**O.      Noise**

Plaintiff complains that the door to the segregation unit slams so loudly that it caused a medical problem with his hearing.  Since Plaintiff does not identify a Defendant against whom he alleges this claim, the claim fails to state claim and will be dismissed.  *See Rizzo v. Goode*,

423 U.S. 362, 375-76 (1976) (To state a claim for relief, Plaintiff must show how each Defendant is accountable because the Defendant was personally involved in the acts about which he complains.).   However, even if he had named such a Defendant, the claim would fail.  To satisfy the objective prong of any Eighth Amendment conditions-of-confinement claim, "extreme deprivations are required," *Hudson*, 503 U.S. at 9, and only grave deprivations of the civilized measure of life's necessities constitute cruel and unusual punishment.  *Rhodes*, 452 U.S. at 347; *Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004).  Slamming cell doors are not atypical or significant hardships in relation to the ordinary incidents of prison life.  *See Sandin v. Conner,* 515 U.S. 472, 484 (1995); *Dorsey v. Metro. Gov't for Nashville & Davidson Cty.*, No. 3:11-0111, 2011 U.S. Dist. LEXIS 57935, *4 (M.D. Tenn. Apr. 14, 2011) (Inmate's complaint about noise fails to rise to the level of constitutional magnitude.).  Plaintiff's complaints are therefore not sufficient to support a constitutional claim.  *Rhodes*, 452 U.S. 349; *Ivey*, 832 F.2d at 954.

Accordingly, Plaintiff's claim concerning the slamming cell door will be dismissed for failure to state a claim upon which relief may be granted.

**P.     Television**

Plaintiff's claim concerning the denial of an unfettered view of the television is also subject to dismissal.  The denial of television does not implicate the constitution, *Glasshofer v. Jeffes*, No. 87-478, 1989 U.S. Dist. LEXIS 9584, at *2 (E.D. Pa. Aug. 10, 1989) ("No court has recognized a federal constitutional right to the usage of radio and television by inmates."), and is not an atypical or significant hardship in relation to the ordinary incidents of prison life.  *See Sandin,* 515 U.S. at 484.

Therefore, Plaintiff's claim concerning access to the television will be dismissed for failure to state a claim upon which relief may be granted.

**Q.      Retaliation**

Plaintiff states that Defendants Osborne and Billings retaliated against him by having Plaintiff held at gunpoint and threatened with harm so that he could not warn inspectors about the conditions at DCDC.  Plaintiff also states that Osborne, Elschide, and Billings placed him in administrative segregation in retaliation for his complaints about having no Islamic service for Muslims, no access to a law library, and the problems with the toilet system.

Retaliation based upon a prisoner's exercise of his constitutional rights violates the Constitution.  *See Thaddeus-X*, 175 F.3d at 394.  In order to set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Id.*

Plaintiff alleges that he was engaged in protected conduct--filing grievances and making complaints.  *See Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000) (holding that prisoner has a First Amendment right to file a grievance against prison officials and this right is protected if the grievance is not frivolous).

Plaintiff further alleges adverse actions were taken against him that would deter a person of ordinary firmness from engaging in that conduct, *i.e.*, being placed in segregation and being held at gunpoint and threatened with harm.  *See id.* at 416 (stating that Sixth Circuit has held that placing an inmate in administrative segregation could deter a person of ordinary firmness from

23

exercising his First Amendment rights); *see also Knecht v. Collins*, Nos. 96-3682, 96-3735, 96-4114, 1999 U.S. App. LEXIS 13645, at *3 (6th Cir. Jun. 15, 1999) (per curiam) (holding a reasonable jury could conclude that prison guards' death threats were sufficient to deter a prisoner of ordinary firmness from exercising First Amendment rights); *Burton v. Livingston*, 791 F.2d 97 (8th Cir. 1986). Plaintiff also sufficiently alleges that the adverse actions were taken as a result of his grievances and complaints.

Upon review, the Court will allow Plaintiff's individual-capacity claims for damages for retaliation to go forward against Defendants Osborne, Billings, and Elschide. In so doing, the Court does not pass judgment on the ultimate merit of this claim.

However, Plaintiff's official-capacity claims of retaliation against Defendants Osborne, Billings, and Elschide will be dismissed. Plaintiff has not alleged that he was retaliated against pursuant to a municipal policy or custom, which is required to state an official-capacity claim against a municipal employee. *Monell*, 436 U.S. at 691; *Deaton*, 989 F.2d at 889. Plaintiff's claim of retaliation appears to be an isolated occurrence affecting only Plaintiff. *See Fox*, 176 F.3d at 348. Accordingly, Plaintiff's official-capacity claims of retaliation against Defendants Osborne, Billings, and Elschide will be dismissed for failure to state a claim upon which relief may be granted.

## IV.

For the reasons set forth herein, and the Court being otherwise sufficiently advised, **IT IS ORDERED** that Plaintiff's § 1983 claims for injunctive relief and his individual-capacity claims against Defendants Thompson and Ballard are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

24

**IT IS FURTHER ORDERED** that Plaintiff's § 1983 official-capacity claims against Defendants Thompson and Ballard for monetary damages are **DISMISSED** pursuant to 28 U.S.C. §§ 1915A(b)(1), (2) for failure to state a claim upon which relief may be granted and for seeking monetary damages from Defendants who are immune from such relief.

Because no claims remain against Defendants Thompson and Ballard, the Clerk of Court is **DIRECTED** to **terminate** them from the action.

**IT IS FURTHER ORDERED** that Plaintiff's § 1983 official-capacity claims of excessive force against Defendants Elschide and Billings and official-capacity claims of retaliation against Defendants Osborne, Billings, and Elschide are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that Plaintiff's § 1983 claims regarding the following conditions are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted:

(a)     incarceration at a county facility;

(b)     denial of transfer;

(c)     denial of access to law library and legal materials;

(d)     defective plumbing;

(e)     grievance handling;

(f)     placement in segregation and high risk confinement;

(g)     removal of property;

(h)     harassment and threats;

(i)     sleep on mat;

25

(j)     medical treatment;

(k)     noise; and

(l)     denial of access to television.

The Court will enter a separate Scheduling Order governing the development of the

claims that have been permitted to proceed.

Date:

cc:     Plaintiff, *pro se*
        Defendants
        Daviess County Attorney
4414.010